UNITED STATES DISTRIC COURT
WESTERN DISTRIC OF MICHIGAN

LISA MacDONALD, Personal
Representative for the ESTATE OF
EMILY D. MacDONALD, deceased
and STEPHEN ERNSTER, Personal
Representative for the ESTATE OF
KORY M. ERNSTER, deceased,

Case No: 1:24-cv-00007-JMB-SJB

Hon. Jane M. Beckering

      Plaintiffs,

v

CITY OF SOUTH HAVEN,
a Michigan Municipal Corporation, and
JOHN DOE,

      Defendants.

---

Ronald L. Marienfeld II (P64232)
MARIENFELD LAW, PLLC
Attorney for Plaintiffs
P.O. Box 965
Jackson, MI 49204
(517) 888-5900
ron@marienfeldlaw.com

Anderw J. Brege (P71474)
Thomas D. Beindit (P81133)
ROSATI, SCULTZ, JOPPICH &
AMTSBEUCHLER, PC
Attorney for Defendant
822 Centennial Way, Ste. 270
Lansing, MI 48917
(517) 886-3800
abreg@rsjalaw.com
tbeindit@rsjalaw.com

---

## PLAINTIFFS' FIRST AMENDED COMPLAINT

*There is another pending civil action between these parties or
other parties arising out of the transaction or occurrence alleged in the Complaint
in Van Buren County Circuit Court, Case Number 22-072271-NO
assigned to the Honorable David J. DiStefano.*

Plaintiff Lisa MacDonald, Personal Representative for the Estate of Emily

D. MacDonald, deceased and Plaintiff Stephen Ernster, Personal Representative

for the Estate of Kory M. Ernster, deceased, by their attorney, MARIENFELD LAW, PLLC and for the General Allegations of their First Amended Complaint, state as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff's decedent Emily D. MacDonald, at all times relevant herein, was a resident of the County of St. Clair, State of Michigan.

2.      Plaintiff Lisa MacDonald, Personal Representative for the Estate of Emily MacDonald is a resident of the County of St. Clair, State of Michigan.

3.      Plaintiff's decedent Kory Ernster, at all times relevant herein was a resident of the County of Dane, State of Wisconsin.

4.      Plaintiff Stephen Ernster, Personal Representative for the Estate of Kory Ernster is a resident of the County of Oakland, State of Michigan.

5.      Defendant City of South Haven is a Michigan Municipal Corporation located in the County of Van Buren, State of Michigan.

6.      Defendant John Doe is unknown by name at this time, but was in control of and operating Defendant City of South Haven's beach flag warning system on the date of incident.   Defendant Doe will be identified through discovery and the pleadings will be amended as necessary.

7.      Upon information and belief, Defendant City of South Haven owns, operates, supervises, manages and/or controls the beaches and flag warning system along the shoreline of Lake Michigan at South Beach, City of South Haven, County of Van Buren, State of Michigan.

2

8.     The incident which is the subject matter of this lawsuit occurred in the County of Van Buren, State of Michigan.

9.     The amount in controversy is in excess of Seventy-Five Thousand ($75,000.00) Dollars.

## COUNT I – GROSS NEGLIGENCE/PREMISES LIABILITY
### EMILY D. MacDONALD

9.     Plaintiff hereby incorporates by reference paragraphs 1 through 8 as set forth above.

10.     On August 8, 2022, at approximately 1:00 p.m., Plaintiff's decedent Emily MacDonald (19) was swimming under yellow flag conditions posted by Defendant City of South Haven on Defendant's South Beach as an invitee, as more fully established by the following particulars:

      A.    On the date of Plaintiff's decedent's death, Defendant City of South Haven's South Beach was held open for public patronage and use to the general public.

      B.    Plaintiff's decedent entered South Beach through an unlocked entrance maintained by the City for visitor's use and was present as a paying patron during regular business hours while utilizing the beach.

      C.    Plaintiff's decedent was expressly or impliedly invited upon the beach controlled by Defendant City of South Haven by way of oral invitations, written signs and/or advertisement.

      D.    Plaintiff's decedent was on the business premises of Defendant City of South Haven's beach for the purpose for which the beach was held open and transacted business in connection therewith.

11.     On or about August 8, 2022, at approximately 1:00 p.m., Plaintiff's

decedent was swimming under yellow flag[1] conditions posted by Defendant's employees and/or agents on Defendant City of South Haven's South Beach when she went under the surface due to hazardous water conditions and drowned. (See **Exhibit A**, police report).

12.     Defendants were or should have been aware of the dangerous conditions as weather forecasts warned of "High Swim Risk" from St. Joseph to Manistee.   (See **Exhibit B**, August 8, 2020 MLive report).

13.     Also, the National Weather Service (NWS) had previously begun warning of dangerous conditions specifically:

- High swim risk
- Waves 4 to 7 feet
- Waves/currents especially dangerous near piers
  (See **Exhibit B**).

14.     As reported by the NWS, "Winds will swing from the south southeast to north and increase to near 30 knots.   That will create large waves, as high as 7 feet.   It will be very dangerous to be in the waters of Lake Michigan today." (See **Exhibit B**).

15.     Regarding the aforementioned hazardous conditions, Defendant City of South Haven and Defendant John Doe negligently and/or grossly negligently caused and allowed the hazard flags to remain at yellow along the section of beach

---

**1** Defendant provides yellow flags indicate moderate surf and/or currents and caution is recommended. Red flags indicate to remain out of the water as it is closed to the public due to high surf and/or currents. (See **Exhibit C**, Defendant's flag warnings).

where Plaintiff's decedent was swimming despite being on notice of hazardous conditions, so as to dangerously minimize the hazardous swimming conditions and failing to acknowledge the unsafe and unreasonably dangerous conditions then existing, thereby making the area unfit for persons to swim, all of which Defendants knew, or in the exercise of reasonable care, should have known.

16.     Defendant City of South Haven owned, managed and/or exercised control of South Beach and the flag warning system at the time of this incident when the Plaintiff's decedent swam under yellow flag conditions posted by Defendants on South Beach when she encountered the dangerous conditions in the water, causing her to go under the surface and drown.

17.     Defendant City of South Haven has experienced several prior drownings on South Beach due to hazardous wave conditions and improper flag warnings.  (See **Exhibit D**, July 6, 2020 police report and **Exhibit E**, prior news articles).

18.     MCL 691.1413 provides:

> Sec. 13.
> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. No action shall be brought against the governmental agency for injury or property damage arising out of the operation of proprietary function, except for injury or loss suffered on or after July 1, 1965.  [Emphasis Supplied].

19.     The proprietary nature of the beach operations is demonstrated by the beach revenues and expenditures, showing it run is for the purpose of

5

producing a pecuniary profit and is admittedly not normally supported by taxes and fees.  (See **Exhibit F**, City financial documents).

20.    On the aforementioned date, Defendant had a duty to exercise ordinary care and caution in and about the maintenance of the flag warning system on the beaches in light of the existing weather/wave conditions and had a duty to keep the same monitored at all times and updated regularly for Plaintiff's decedent and other persons lawfully swimming in the area, so as not to permit swimming under known hazardous conditions.

21.    On the aforementioned date, Plaintiff's decedent exercised ordinary care and caution and behaved in a reasonable and prudent manner, pursuant to the existing flag warnings posted by Defendant.

22.    Defendants failed to exercise ordinary care and demonstrated a reckless disregard for the safety of Plaintiff's decedent in the maintenance of the flag warning system and beaches under its control and demonstrated gross negligence when they failed to keep the flag warning system updated and appropriate for conditions for Plaintiff's decedent and other persons lawfully swimming in the area.

23.    On the aforementioned date, Defendants negligently and/or grossly negligently operated/maintained the beach flag warning system.  It was this negligent and/or grossly negligent operation/maintenance of Defendant City of South Haven's flag warning system which caused or contributed to the damages and injuries to Plaintiff's decedent in the following particulars:

6

A.      Defendants maintained the beach flag system in a manner so as to create a hazardous and dangerous condition.

B.      Defendants failed to keep the beach safe and clear for its invitees in general and Plaintiff's decedent in particular by not properly monitoring its flag system.

C.      Defendants failed to update the warning system for South Beach consistent with existing wave/current conditions of which it was on notice.

D.      Defendants failed to properly operate the beach flag system and warn Plaintiff's decedent of the dangerous and hazardous conditions then and there existing.

E.      Defendants failed to close the beach or take other actions to prevent swimming under the existing conditions.

F.      Defendants failed to inspect the water conditions in order to discover and diminish the hazard of injury to its invitees in general and Plaintiff's decedent in particular by updating the flag system.

G.      Defendants failed to timely place a red flag or close the beach to the public in light of the known wave conditions so as to diminish the hazard of injury to its invitees in general and to Plaintiff's decedent in particular and Defendant City had an ongoing custom in this regard.

H.      Defendant City of South Haven failed to have in place, at the time of Plaintiff's decedent's injuries, a procedure for the inspection of water on its beach as well as for the updating of the flag warning system.

I.      Defendant City of South Haven failed to exercise that degree of care, caution and circumspection an entity maintaining a beach would generally exercise under the same or similar circumstances so its invitees in general and Plaintiff's decedent in particular would not suffer harm.

J.      Defendants failed to inspect, discover or otherwise observe the wave conditions then and there existing in order to determine whether its invitees in general, and Plaintiff's decedent in particular could use its beach with reasonable safety.

K.      Defendants knew, or in the exercise of reasonable care,

should have known that a dangerous and hazardous condition existed and that serious injury and/or death could result therefrom.

L.   Defendants City of South Haven, and/or its employees/agents including, but not limited to Defendant John Doe knew, or in the exercise of reasonable care, should have known that their failure to adequately upgrade the hazard flag or close the beach could result in serious injury and/or death to its invitees in general and Plaintiff's decedent in particular.

M.   Defendants failed to have in place and/or follow a written policy regarding inspection of its beaches and wave conditions at the time of Plaintiff's decedent's injuries.

N.   Defendant City of South Haven failed to adequately train its employees regarding inspecting its beaches for dangerous and hazardous conditions.

O.   Defendant City of South Haven failed to place lifeguards or other trained personnel to properly monitor the beach and flag warning system.

24.   Any negligence or gross negligence on the part of Defendant City of South Haven's employees, servants and/or agents is imputed to and becomes the negligence of the City through the doctrine of respondeat superior and through the customs and policies it creates or allows.

25.   As a direct and proximate result of Defendant's negligence or gross negligence, Plaintiff's decedent was seriously injured in her health, strength and activity sustaining injury to her body including, but not limited to: (1) loss of life/drowning; (2) Estate damages for loss of society and companionship.

26.   Plaintiff, on behalf of the Estate and all individuals entitled to damages under the wrongful death act, requests all damages that are fair and just under the circumstances, including, without limitation the following:

8

A.   Reasonable medical, hospital, funeral and burial expenses;

B.   Reasonable compensation for the pain and suffering the decent experienced while he was conscious during the time between his injury and his death;

C.   Losses suffered by the next of kin as a result of the decedent's death, including the following:

i.    Loss of financial support;

ii.   Loss of services;

iii.  Loss of gifts and other valuable gratuities;

iv.  Loss of parental training and guidance;

v.   Loss of society and companionship, and

vi.  Other miscellaneous losses.

Plaintiff makes claim for all non-economic losses and any economic losses pursuant to MCL 600.2922 and the amount in controversy exceeds the sum of Twenty-Five Thousand ($25,000.00) Dollars.   Plaintiff makes claim for any amount Plaintiff's Estate may be entitled to, plus costs and interest for whatever amount the Court may deem just and proper and the nature of this case may require.

**COUNT II – 42 USC § 1983**
**EMILY D. MacDONALD**

Plaintiff hereby incorporates by reference paragraphs 1 through 24 as set forth above.

27.   This action arises under 42 USC 1983. Jurisdiction is conferred by 28 USC 1331, 1343(3), (4).

28.   When the events alleged in this complaint occurred, Defendant City of South Haven's employes and/or agents, including, but not limited to Defendant

9

John Doe were acting within the scope of their employment or agency and under color of law, as well as the customs and policies of the City.

29.   At all material times, Defendant employed or utilized the services of employees and /or agents, including Defendant John Doe, in regard to operation of the flag warning system on its beaches and is liable for their acts due to the customs and policies put in place by the City.

30.   The City is also liable because of its policies, practices, and customs, which lead to this complaint of violation.   Specifically, Defendant had a custom and/or policy of placing the beach warning flags at yellow, instead of red, thereby encouraging swimming despite known hazardous weather and/or wave conditions, which was motivated by pecuniary purposes.

31.   Approximately two years prior, a very similar incident occurred, when an 18 year old man drowned under yellow flag conditions.   (See **Exhibit D**).

32.   Multiple other drownings have occurred, which have involved inconsistent flag warnings given the wave/current conditions.   (See **Exhibit G**, news articles).

33.   On or about August 8, 2022, at approximately 1:00 p.m., Plaintiff's decedent was swimming under yellow flag conditions posted by Defendant's employees and/or agents on Defendant City of South Haven's South Beach when she went under the surface due to rip currents/waves and drowned.

10

34.     Due to lack of lifeguards or qualified personnel on the beaches, Plaintiff's decedent was observed struggling and had to be pulled from the water by other beach goers.   Tragically, she did not survive.

35.     Plaintiff's decedent's constitutionally protected rights which Defendant violated include the following:

> a.     her right to life, liberty and bodily integrity protected in the substantive component of the Due Process Clause of the Fourteenth Amendment, which includes personal safety, freedom from captivity, and right to medical care and protection.

36.     Defendant's employees and/or agents acting under color of state law, provided Plaintiff's decedent a false sense of security by posting yellow flags on the beaches in light of the known hazardous wave/current conditions.   In doing so, they established a special custodial relationship with Plaintiff's decedent, giving rise to affirmative duties on their part to secure for her the constitutionally protected rights identified above.

37.     Those rights includes her right to life and personal safety, which were placed at risk by Defendant's conscious decision to leave the beach open even with the known hazardous water conditions and was a city-created danger, done for purely pecuniary reasons.

38.     Defendant's employees' and/or agents' violation of their affirmative duties in posting yellow flags despite hazardous wave/current conditions and their knowledge of said conditions prevented Plaintiff's decedent from making an informed decision as to her life and personal safety and violated her constitutionally

11

protected rights and was a result of actions taken by its City Manager, as well as a result of inadequate training and/or supervision.

39.     This situation, while Plaintiff's decedent was acting upon Defendant's direction and flag warning system, is the direct and proximate cause of the subsequent deprivation of Plaintiff's decedent's constitutional rights described above.

40.     Defendant's employees and/or agents acting under color of state law and in concert with one another, by their conduct, showed deliberate indifference and disregard for Plaintiff's decedent's constitutional rights by ignoring the known risk of hazardous water conditions and not placing a red flag warning.

41.     Further, the City's custom and practice of not properly utilizing the flag warning system to reflect existing weather/water conditions and not providing lifeguards or qualified personnel on the beaches in light of the history of drownings, showed deliberate indifference to Plaintiff's decedent's personal safety and was a deprivation of her constitutionally protected Fourteenth Amendment rights.

42.     Defendant's employees'/agents' previously described posting of yellow warning flags in light of known hazardous conditions and failure to provide lifeguards, was done with a knowing disregard of a known risk to Plaintiff's decedent's health or well-being and was done for pecuniary reasons.

43.     In fact, Defendant's City Manager, who has final decision making authority, has publicly opposed what she considers over utilized red flags and use

of lifeguards despite the year after year profits earned by the beaches and repeated drownings.   (See **Exhibit H**, City Manager's statement).

44.    As a direct and proximate result of Defendant City of South Haven and its employees'/agents' conduct, Plaintiff's decedent suffered physical and emotional injury, loss of life, and other constitutionally protected rights described above.   Plaintiff's Estate also sustained damages pursuant to Michigan's wrongful death statute, MCL 600.2922.

45.    Defendant City of South Haven acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices and customs, establishing a de facto policy of deliberate indifference to individuals such as Plaintiff's decedent by failing to post red flags despite known hazardous water conditions and in light of multiple prior similar incidents.

46.    As a direct and proximate result of these policies, practices, and customs, Plaintiff's decedent was deprived of her constitutionally protected Fourteen Amendment right to life and personal safety.

PLAINTIFF REQUESTS this Court enter judgment against Defendants in an amount consistent with the damages sustained and as outlined above.

### COUNT III – GROSS NEGLIGENCE/PREMISES LIABILITY
### KORY M. ERNSTER

47.    Plaintiff hereby incorporates by reference paragraphs 1 through 39 as set forth above.

48.    On August 8, 2022, at approximately 1:00 p.m., Plaintiff's decedent

Kory Ernster (22) was swimming under yellow flag conditions posted by Defendant City of South Haven on Defendant's South Beach as an invitee, as more fully established by the following particulars:

A.   On the date of Plaintiff's decedent's death, Defendant City of South Haven's South Beach was held open for public patronage and use to the general public.

B.   Plaintiff's decedent entered South Beach through an unlocked entrance maintained by the City for visitor's use and was present as a paying patron during regular business hours while utilizing the beach.

C.   Plaintiff's decedent was expressly or impliedly invited upon the beach controlled by Defendant City of South Haven by way of oral invitations, written signs and/or advertisement.

D.   Plaintiff's decedent was on the business premises of Defendant City of South Haven's beach for the business purpose for which the beach was held open and transacted business in connection therewith.

49.   On or about August 8, 2022, at approximately 1:00 p.m., Plaintiff's decedent was swimming under yellow flag[2] conditions posted by Defendant's employees and/or agents on Defendant City of South Haven's South Beach when he went under the surface due to hazardous water conditions and drowned.   (see **Exhibit A**, police report).

50.   Defendants were or should have been aware of the dangerous conditions as weather forecasts warned of "High Swim Risk" from St. Joseph to Manistee.   (See **Exhibit B**, August 8, 2020 MLive report).

---

**2** Defendant provides yellow flags indicate moderate surf and/or currents and caution is recommended. Red flags indicate to remain out of the water as it is closed to the public due to high surf and/or currents. (See **Exhibit C**, Defendant's flag warnings).

51.   Also, the National Weather Service (NWS) had previously begun warning of dangerous conditions, specifically:

- High swim risk
- Waves 4 to 7 feet
- Waves/currents especially dangerous near piers
  (See **Exhibit B**).

52.   As reported by the NWS, "Winds will swing from the south southeast to north and increase to near 30 knots.   That will create large waves, as high as 7 feet.  It will be very dangerous to be in the waters of Lake Michigan today." (See **Exhibit B**).

53.   Regarding the aforementioned hazardous conditions, Defendant City of South Haven and Defendant John Doe negligently and/or grossly negligently caused and allowed the hazard flags to remain at yellow along the section of beach where Plaintiff's decedent was swimming despite being on notice of hazardous conditions, so as to dangerously minimize the hazardous swimming conditions and failing to acknowledge the unsafe and unreasonably dangerous conditions then existing, thereby making the area unfit for persons to swim, all of which Defendants knew, or in the exercise of reasonable care, should have known.

54.   Defendant City of South Haven owned, managed and/or exercised control of South Beach and the flag warning system at the time of this incident when the Plaintiff's decedent swam under yellow flag conditions posted by Defendants on South Beach when he encountered the dangerous conditions in the water, causing him to go under the surface and drown.

55.     Defendant City of South Haven has experienced several prior drownings on South Beach due to hazardous wave conditions and improper flag warnings.  (See **Exhibit D**, July 6, 2020, police report and **Exhibit E**, prior news articles).

56.     MCL 691.1413 provides:

> Sec. 13.
> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. No action shall be brought against the governmental agency for injury or property damage arising out of the operation of proprietary function, except for injury or loss suffered on or after July 1, 1965.   [Emphasis Supplied].

57.     The proprietary nature of the beach operations is demonstrated by the beach revenues and expenditures, showing it run is for the purpose of producing a pecuniary profit and is admittedly not normally supported by taxes and fees.  (See **Exhibit F**, City financial documents).

58.     On the aforementioned date, Defendant had a duty to exercise ordinary care and caution in and about the maintenance of the flag warning system on the beaches in light of existing weather/wave conditions and had a duty to keep the same monitored at all times and updated regularly for Plaintiff's decedent and other persons lawfully swimming in the area, so as not to permit swimming under known hazardous conditions.

59.     On the aforementioned date, Plaintiff's decedent exercised ordinary care and caution and behaved in a reasonable and prudent manner, pursuant to

16

the existing flag warnings posted by Defendant.

60.     Defendants failed to exercise ordinary care and demonstrated a reckless disregard for the safety of Plaintiff's decedent in the maintenance of the flag warning system and beaches under its control and demonstrated gross negligence when they failed to keep the flag warning system updated and appropriate for conditions for Plaintiff's decedent and other persons lawfully swimming in the area.

61.     On the aforementioned date, Defendants negligently and/or grossly negligently operated/maintained the beach flag warning system.  It was this grossly negligent operation/maintenance of Defendant City of South Haven's flag warning system which caused or contributed to the damages and injuries to Plaintiff's decedent in the following particulars:

A.     Defendants maintained the beach flag system in a manner so as to create a hazardous and dangerous condition.

B.     Defendants failed to keep the beach safe and clear for its invitees in general and Plaintiff's decedent in particular by not properly monitoring its flag system.

C.     Defendants failed to update the warning system for South Beach consistent with existing wave/current conditions of which it was on notice.

D.     Defendants failed to properly operate the beach flag system and warn Plaintiff's decedent of the dangerous and hazardous conditions then and there existing.

E.     Defendants failed to close the beach or take other actions to prevent swimming under the existing conditions.

F.     Defendants failed to inspect the water conditions in order to discover and diminish the hazard of injury to its invitees in general and Plaintiff's decedent in particular by updating the

17

flag system.

G.      Defendants failed to timely place a red flag or close the beach to the public in light of the known wave conditions so as to diminish the hazard of injury to its invitees in general and to Plaintiff's decedent in particular and Defendant City had an ongoing custom in this regard.

H.      Defendant City of South Haven failed to have in place, at the time of Plaintiff's decedent's injuries, a procedure for the inspection of water on its beach as well as for the updating of the flag warning system.

I.      Defendant City of South Haven failed to exercise that degree of care, caution and circumspection an entity maintaining a beach would generally exercise under the same or similar circumstances so its invitees in general and Plaintiff's decedent in particular would not suffer harm.

J.      Defendants failed to inspect, discover or otherwise observe the wave conditions then and there existing in order to determine whether its invitees in general, and Plaintiff's decedent in particular could use its beach with reasonable safety.

K.      Defendants knew, or in the exercise of reasonable care, should have known that a dangerous and hazardous condition existed and that serious injury and/or death could result therefrom.

L.      Defendant City of South Haven, and/or its employees/agents including, but not limited to Defendant John Doe knew, or in the exercise of reasonable care, should have known that their failure to adequately upgrade the hazard flag or close the beach could result in serious injury and/or death to its invitees in general and Plaintiff's decedent in particular.

M.      Defendants failed to have in place and/or follow a written policy regarding inspection of its beaches and wave conditions at the time of Plaintiff's decedent's injuries.

N.      Defendant City of South Haven failed to adequately train its employees regarding inspecting its beaches for dangerous and hazardous conditions.

O.      Defendant City of South Haven failed to place lifeguards or

18

other trained personnel to properly monitor the beach and
flag warning system.

62.     Any negligence on the part of Defendant City of South Haven's
employees, servants and/or agents is imputed to and becomes the negligence of
the City through the doctrine of respondeat superior and through the customs and
policies it creates or allows.

63.     As a direct and proximate result of Defendant's negligence, Plaintiff's
decedent was seriously injured in his health, strength and activity sustaining injury
to his body including, but not limited to: (1) loss of life/drowning; (2) Estate
damages for loss of society and companionship.

64.     Plaintiff, on behalf of the Estate and all individuals entitled to
damages under the wrongful death act, requests all damages that are fair and just
under the circumstances, including, without limitation the following:

   A.   Reasonable medical, hospital, funeral and burial expenses;

   B.   Reasonable compensation for the pain and suffering the
        decent experienced while he was conscious during the time
        between his injury and his death;

   C.   Losses suffered by the next of kin as a result of the
        decedent's death, including the following:

        i.    Loss of financial support;

        ii.   Loss of services;

        iii.  Loss of gifts and other valuable gratuities;

        iv.   Loss of parental training and guidance;

        v.    Loss of society and companionship, and

        vi.   Other miscellaneous losses.

19

## COUNT IV – 42 USC § 1983
## KORY M. ERNSTER

Plaintiff hereby incorporates by reference paragraphs 1 through 55 as set forth above.

65.    This action arises under 42 USC 1983. Jurisdiction is conferred by 28 USC 1331, 1343(3), (4).

66.    When the events alleged in this complaint occurred, Defendant City of South Haven's employes and/or agents, including, but not limited to Defendant John Doe were acting within the scope of their employment or agency and under color of law, as well as under the customs and policies of the city.

67.    At all material times, Defendant employed or utilized the services of employees and/or agents, including Defendant John Doe, in regard to operation of the flag warning system on its beaches and is liable for their acts due to the customs and policies put in place by the City.

68.    The City is also liable because of its policies, practices, and customs, which lead to this complaint of violation.   Specifically, Defendant had a custom and/or policy of placing the beach warning flags at yellow, instead of red, thereby encouraging swimming despite known hazardous weather and/or wave conditions, which was motivated by pecuniary purposes.

69.    Approximately two years prior, a very similar incident occurred, when an 18 year old man drowned under yellow flag conditions.   (See **Exhibit D**).

20

70.    Multiple other drownings have occurred, which have involved inconsistent flag warnings given the wave/current conditions.  (See **Exhibit G**, news articles).

71.    On or about August 8, 2022, at approximately 1:00 p.m., Plaintiff's decedent was swimming under yellow flag conditions posted by Defendant's employees and/or agents on Defendant City of South Haven's South Beach when he went under the surface due to rip currents/waves and drowned.

72.    Due to lack of lifeguards or qualified personnel on the beaches, Plaintiff's decedent was observed struggling and had to be pulled from the water by other beach goers.   Tragically, he did not survive.

73.    Plaintiff's decedent's constitutionally protected rights which Defendant violated include the following:

    a.    his right to life, liberty and bodily integrity protected in the substantive component of the Due Process Clause of the Fourteenth Amendment, which includes personal safety, freedom from captivity, and right to medical care and protection.

74.    Defendant's employees and/or agents acting under color of state law, provided Plaintiff's decedent a false sense of security by posting yellow flags on the beaches in light of the known hazardous wave/current conditions.   In doing so, they established a special custodial relationship with Plaintiff's decedent, giving rise to affirmative duties on their part to secure for him the constitutionally protected rights identified above.

21

75.     Those rights includes his right to life and personal safety, which were placed at risk by Defendant's conscious decision to leave the beach open even with the known hazardous water conditions and was a city-created danger, done for purely pecuniary reasons.

76.     Defendant's employees' and/or agents' violation of their affirmative duties in posting yellow flags despite hazardous wave/current conditions and their knowledge of said conditions prevented Plaintiff's decedent from making an informed decision as to his life and personal safety and violated his constitutionally protected rights and was a result of actions taken by its City Manager, as well as a result of inadequate training and/or supervision.

77.     This situation, while Plaintiff's decedent was acting upon Defendant's direction and flag warning system, is the direct and proximate cause of the subsequent deprivation of Plaintiff's decedent's constitutional rights described above.

78.     Defendant's employees and/or agents acting under color of state law and in concert with one another, by their conduct, showed deliberate indifference and disregard for Plaintiff's decedent's constitutional rights by ignoring the known risk of hazardous water conditions and not placing a red flag warning.

79.     Further, the City's custom and practice of not properly utilizing the flag warning system to reflect existing weather/water conditions and not providing lifeguards or qualified personnel on the beaches in light of the history of drownings,

22

showed deliberate indifference to Plaintiff's decedent's personal safety and was a deprivation of his constitutionally protected Fourteenth Amendment rights.

80.   Defendant's employees'/agents' previously described posting of yellow warning flags in light of known hazardous conditions and failure to provide lifeguards, was done with a knowing disregard of a known risk to Plaintiff's decedent's health or well-being and was done pecuniary reasons.

81.   In fact, Defendant's City Manager, who has final decision making authority, has publicly opposed what she considers over utilizing red flags and use of lifeguards despite the year after year profits earned by the beaches and repeated drownings.   (See **Exhibit H**, City Manager statement).

82.   As a direct and proximate result of Defendant City of South Haven and its employees'/agents' conduct, Plaintiff's decedent suffered physical and emotional injury, loss of life, and other constitutionally protected rights described above.   Plaintiff's Estate also sustained damages pursuant to Michigan's wrongful death statute, MCL 600.2922.

83.   Defendant City of South Haven acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices and customs, establishing a de facto policy of deliberate indifference to individuals such as Plaintiff's decedent by failing to post red flags despite known hazardous water conditions and in light of multiple prior similar incidents.

84.     As a direct and proximate result of these policies, practices, and customs, Plaintiff's decedent was deprived of his constitutionally protected Fourteenth Amendment right to life and personal safety.

PLAINTIFF REQUESTS this Court enter judgment against Defendants in an amount consistent with the damages sustained and as outlined above.

## CERTIFICATE OF COMPLIANCE

This document contains 5,579 words and was created using Arial 12 point font.

Dated: January 31, 2024                          MARIENFELD LAW, PLLC

                                                 By: _____
                                                     Ronald L. Marienfeld II (P64232)
                                                     Attorney for Plaintiffs

## PROOF OF SERVICE

The undersigned certifies that on the 31st day of January, 2024, a copy of the foregoing document was served upon the attorney(s) of record in this matter at their stated business address as disclosed by the records herein via:

| | | | |
|---|---|---|---|
| ☐ | Hand delivery | ☐ | Overnight mail |
| ☐ | U.S. Mail | ☐ | Facsimile |
| ☒ | Electronic E-File | ☐ | Email |

I declare under the penalty of perjury that the foregoing statement is true to the best of my information, knowledge and belief.

_/s/ Barbara K. Heselschwerdt_
Barbara K. Heselschwerdt

24

# EXHIBIT A



**South Haven**

# City of South Haven

### POLICE DEPARTMENT

90 Blue Star Highway, Suite 1 • South Haven, Michigan 49090
Telephone (269) 637-5151 • Fax (269) 637-9346

Natalie Thompson
Chief of Police

September 13, 2022

Stephanie Ernster
43925 Settlers Creek Ct.
Novi, MI 48375

Re:     SHPD Incident report number 22-1260

Dear Ms. Ernster,

**Under the Michigan Freedom of Information Act (FOIA), MCL 15.231 et seq. you requested:**

Incident report number 22-1260.

**The South Haven Police Department's response to your request:**

SHPD Incident report number 22-1260 is attached.

Your request has been granted in part and denied in part.
Some information is exempt from disclosure and has been redacted under the Freedom of Information Act 15.243 Section 13
paragraph (1) (a)(b)(iii) Information of a personal nature if public disclosure of the information would constitute a clearly
unwarranted invasion of an individual's privacy. The information redacted is personal identifying information. MCL 28.214
C.J.I.S. Policy Council Act (LEIN information). There is no charge for this information and this will complete your request.

        Please be advised that you have the right to do either of the following, insofar as you believe that some or all of your
request has been denied:

        1.  You may submit to the City Manager a written appeal from the denial of your FOIA request, specifically
incorporating the word "appeal" and identifying your reason(s) for seeking the reversal of the disclosure denial;

        2. You may seek judicial review of the disclosure denial under Section 10 of the Michigan Freedom of Information Act,
MCL §15.240.

        You have the right to seek damages and an award of reasonable attorney fees, cost and disbursement, if the Circuit
Court orders disclosure of all or part of the records identified in your request.

Sincerely,

Michelle Fisher
Michelle Fisher
Records Clerk

Attachment

**South Haven Police Department -- (269) 637-5151**
**90 Blue Star Highway, South Haven, MI 49090**

| Incident No: | 22-001260 |
|---|---|
| Status: | **Closed** |

| | |
|---|---|
| Date Reported: | **Mon 08/08/2022 13:17:00** |
| Dispatch Time: | Arrival Time: | Clear Time: |
| Officers: | **KNIZEWSKI, MIKE** | Detective: |
| Classification: | **GENERAL ASSISTANCE -- (99008)** |
| Area: | **CITY OF SOUTH HAVEN** |
| Location: | **WATER ST, SOUTH HAVEN (SOUTH BEACH)** | Section / Nbh:  / |
| Description: | **DROWNING, 2 VICTIMS** | Entered:  **KNIZEWSKI** |

**Witness: (99008 GENERAL ASSISTANCE)**

**SANDERCOCK, MICHAEL**          DOB:          Age: **34**
                                 Phone:

Race:  **White**    Sex:  **Male**

**Witness: (99008 GENERAL ASSISTANCE)**

**GORDON, THOMAS**               DOB:          Age: **52**
                                 Phone:

Race:  **White**    Sex:  **Male**

**SUBJECT: (99008 GENERAL ASSISTANCE)**

**ERNSTER, KYLE, RAYMOND**       DOB:          Age: **22**
                                 Phone:

Race:  **White**    Sex:  **Male**

**SUBJECT: (99008 GENERAL ASSISTANCE)**

**ERNSTER, ABIGAIL, ELIZABETH**

Race:  **White**    Sex:  **Female**

**DECEASED: (99008 GENERAL ASSISTANCE)**

**ERNSTER, KORY, MICHAEL**       DOB:          Age: **22**                          [S:2]

Ops:
Race:  **White**    Sex:  **Male**        Eyes:  **Blue**    Ethnicity: **Unknown**
Height: **5' 8"**   Weight: **120 lbs.**

**DECEASED: (99008 GENERAL ASSISTANCE)**

**MACDONALD, EMILY, DANIELLE**   DOB:          Age: **19**                          [S:2]

Ops:
Race:  **White**    Sex:  **Female**      Eyes:  **Hazel**   Ethnicity: **Unknown**
Height: **5' 10"**  Weight: **150 lbs.**

**Witness: (99008 GENERAL ASSISTANCE)**

**ERNSTER, ABBY**                DOB:          Age: **17**                          [S:2]

| | | | | | Incident No: | **22-001260** |

| Race: | **White** | Sex: | **Female** | | | Ethnicity: **Unknown** | |

**Parent/Guardian: (99008 GENERAL ASSISTANCE)**

| **ERNSTER, STEPHEN, RAY** | | | DOB: | | Age: **50** | [S:2] |

Ops:

| Race: | **White** | Sex: | **Male** | | Eyes: | **Brown** | Ethnicity: **Unknown** |
| Height: **6' 0"** | | Weight: **175 lbs.** | | | | | |

| **INITIAL INCIDENT** | **Reporting Officer: KNIZEWSKI, MIKE** | **08/08/22** |

INFORMATION:

I assisted in the call for a report of a subject that had drowned on South Beach near flag 11. It was reported that bystanders were performing CPR.

PRIOR CALL:

Officers were sent to the south beach for a report of someone possibly screaming near the buoys. The caller could not be sure it was a distress scream but was concerned. I arrived in the area and began scanning the beach/ buoys with my binoculars. I could not see anyone near the buoys from the jet ski rental near the brown stairs to the north near the pier.

ARRIVAL:

I arrived near flag # 11 and drove as far as I could on the boardwalk. I retrieved my C.P.R. mask and A.E.D.

CONTACT WITH VICTIM:

I arrived at the shoreline to 2-3 subjects performing C.P.R. on female that was unconscious and not breathing. The female was later identified as EMILY MACDONALD. MACDONALD was moved from the shoreline out of the water to drier sand. C.P.R. compressions were being on MACDONALD at the time. I retrieved my C.P.R. mask and gave it to a female that had been trying to perform rescue breaths. I took over doing compressions and alternated with Ofc Van Brussel, and SHAES personnel that later arrived. During the course of the CPR rounds I was able to get my A.E.D. attached. The A.E.D. went through approximately 4-5 rounds without advising to perform a shock. C.P.R. was continued until SHAES was able to take over life saving efforts.

OBSERVATION OF SECOND VICTIM:

While performing C.P.R. I was notified of possible second victim, who may be in the water. I advised dispatch and saw that a male victim, identified as KORY ERNSTER was being brought to shore and appeared to be unconscious. This occurred about 3 minutes after I had begun C.P.R. C.P.R. was being performed on ERNSTER however I was too far away to by whom. I directed SHAES who had been arriving that the second victim was to the north.

INTERVIEW WITNESS:

I spoke to MICHAEL SANDERCOCK who had help retrieve both drowning victims from the water. SANDERCOCK explained that he had seen both of the victims out near the buoy to the south of flag 11. He had watched as they appeared to be a ways out but did not appear to be in any trouble. 2-3 minutes later

Incident No:    **22-001260**

SANDERCOCK saw that both victims had drifted further north to the next buoy. SANDERCOCK saw that the victims were still near the buoys but not in distress. 2-3 minutes later SANDERCOCK saw that the victims were not visible but that it appeared to be a body floating neat where he last saw the couple. SANDERCOCK and another subject, THOMAS GORDON swam out to the buoy and located the victim EMILY MACDONALD. MACDONALD was brought to the shore where CPR had begun. SANDERCOCK knew a potential second victim could still be in the water, he and GORDON went out and saw the second victim floating. SANDERCOCK and GORDON were able to retrieve KORY ERNSTER from the surf and bring him to the shore where C.P.R. was given.

| SUPPLEMENT 1 (Supplement 1) | Reporting Officer: GRIFFITH, KYLE | 08/08/22 |
|---|---|---|

**FLAGS/CONDITIONS:**

Waves appeared to be about 2' high. The beach was sparsely populated with more visitors and swimmers by the bluestairs.

The beach flags were yellow before and during this incident

**INTERVIEW K ERNSTER:**

In the chaos I was able to locate K ERNSTER. He is twin brother to deceased male. Deceased male is boyfriend to deceased female. They were among a group of 13 people staying at rental 209 Clinton for a vacation. The group planned to be at the beach today. Both of the deceased had left prior to the rest of the group by at least a half hour at or around 1100 AM. When the rest of the group arrived they found CPR being administered to both subjects

**INTERVIEW A ERNSTER:**

A ERNSTER is sister to deceased male. She was too distraught to give statement.

**NOK:**

Father of deceased male called parents of deceased female to notify them

**HOSPITAL SECURITY:**

Police presence was requested to Bronson for the large group of distraught friends and family. MSP and Ofc Wildey responded.

**STATUS: TOT ORIGINAL**

| SUPPLEMENT 2 (Supplement 2) | Reporting Officer: WILDEY, KEVIN | 08/08/22 |
|---|---|---|

**INFORMATION:**

I responded to South Beach at flag 11 for a dive team activation for two persons pulled from the water with the possibility of a third still missing. Upon my arrive I made contact with Sgt Griffith ho advised both victims had been transported to Bronson South Haven and that it had been confirmed that there was no third person missing. I responded to the ER to meet with the family.

CONTACT HOSPITAL STAFF:

Incident No:       **22-001260**

I arrived at Bronson South Haven and met with hospital staff who advised both patients had deceased. I made contact with the family in the waiting room where I made death notifications.

CONTACT MEDICAL EXAMINER:

I contacted central dispatch to request the medical examiner to the ER. ME Robert Smith with WMED responded to the Hospital.

CONTACT STEPHEN ERNSTER:

I spoke with the male victims father, Stephen Ernster with his wife and daughter present, in the chapel at the Hospital and confirmed they were aware that their son had passed away. Stephen was able to provide me with both victims information, identifying them as his son, Kory Michael Ernster, and Kory's girl friend Emily MacDonald. Stephen had already been in contact with Emily's mother Lisa MacDonald, who was on her way from St Clair.

CONTACT ABBY ERNSTER:

Abby is Kory's sister. Abby was able to provide somewhat of a timeline. She advised Kory and Emily had left the house to go to the beach sometime around 12:00. Abby and some others left for the beach to join them, arriving at 1230. She had texted her mother when they arrived, confirming the time of 12:30. When Abby arrived she found Kory and Emily's blankets but did not see the two around. Approx 5-10 minutes later the first police car arrive for the unconscious victims in the water.

VICTIMS SERVICES:

VSU was contacted to respond to the ER for the family, as well as Bronson's in house counselor.

STATUS:

TOT original

# EXHIBIT B

# Waves up to 7 feet forecast for some Lake Michigan beaches

Updated: Aug. 08, 2022, 1:10 p.m. | Published: Aug. 08, 2022, 10:59 a.m.



Dangerous currents and waves are forecast for some Lake Michigan beach areas on Aug. 8, 2022. Image courtesy of the National Weather Service.

143 shares

By Tanda Gmiter | tgmiter@mlive.com

HOLLAND, MI - Beach areas up and down Lake Michigan are under a Beach Hazards advisory from the National Weather Service, with waves up to 7 feet forecast for some spots today.

The NWS office in Grand Rapids issued a hazard statement earlier today. It runs through Tuesday morning.

An anticipated mix of dangerous waves and currents and increasing wave size are driving the cautionary messaging as storms pass through the area today and a cold front moves into Michigan later Monday. The NWS said the following conditions are expected:

- High swim risk between St. Joseph and Manistee.
- Waves 4 to 7 feet expected.
- Waves and currents will be especially dangerous near piers.

Of special concern in conditions like this are strong currents that can pull swimmers into deeper water and high waves that can sweep people off piers, the NWS said.

"Today will not be the best day to go to our Lake
Michigan beaches," NWS meteorologists in Grand
Rapids said when sharing the beach warning on
social media. "Winds will swing from the south
southeast to north and increase to near 30 knots.
That will create large waves, as high as 7 feet. It
will be very dangerous to be in the waters of Lake
Michigan today."

Grand Haven State Park also shared today's
beach hazards message on its Facebook page.
On Sunday, a 21-year-old man from
Wyoming drowned when he was swept out of the
swim area.

If you purchase a product or register for an
account through a link on our site, we may receive
compensation. By using this site, you consent to
our User Agreement and agree that your clicks,
interactions, and personal information may be
collected, recorded, and/or stored by us and social
media and other third-party partners in
accordance with our Privacy Policy.

# EXHIBIT C

Home ❯ Departments ❯ Parks And Recreation ❯ Beaches ❯ Beach Flag Status

# Beach Flag Status

*Sign up for text alerts regarding beach flags status! Text "beaches" to the 888777!*



| Key: | *Note: Flags are updated periodically each day. Refresh your browser for most recent information* |
|---|---|
|  | **When a GREEN flag is flying there are calm conditions. Caution should always be exercised when entering the water.** |
| | **When a YELLOW flag is flying there is a moderate surf and/or currents. Caution should always be exercised when entering the water.** |
| | **When the RED flag is flying the water is closed to the public due to the high surf and/or strong currents. Rip currents are especially prevalent and dangerous along the piers.** |
| | **A GRAY flag appearing on a map indicates that either no information is available, conditions are not being monitored (9pm-9am), or the Beach Safety Program is out-of-season (Sept. 15 - May 15).** |

View South Beach Cam

NDBC
Station 45168

South Haven Buoy, MI
42.397N 86.331W

No Current Reports

More observations for 45168

Enter a station ID: [          ]  [Go!]

Flags are monitored between 9am and 9pm.  Physical flags represent the most current Beach Safety Program status information. Changes to flag color are made to physical flags prior to being reflected in the above map.

ADA assist: click here for a text version of the beach flag color information,

539 Phoenix Street, South Haven, MI 49090   |   **(269) 637-0700**

POWERED BY REVIZE

© City of South Haven | Michigan
Photographs courtesy of Tom Renner

# EXHIBIT D

S HAVEN AREA EMERGNCY SERVICES, SOUTH HAVEN, MICHIGAN  49090

Basic Incident Information Report

Printed: 09/11/2020

## Incident No.: 0001548, Exp. No.: 000, 09/06/2020

### Basic Information

| Location | | |
|---|---|---|

|  | Date | Time |
|---|---|---|
| Alarm: | 09/06/2020 | 16:20 |
| Dispatch: | 09/06/2020 | 16:20 |
| En Route: | 09/06/2020 | 16:20 |
| Arrival: | 09/06/2020 | 16:25 |
| Controlled: | / / | : : |
|  | 09/06/2020 | 19:34 |

60 Water ST
South Haven, MI 49090

| Shft/Pltoon | Alarms | District |
|---|---|---|
| B | 3 | |

Census Tract: 01 -

**Incident Type**
361  Swimming/recreational water areas rescue

**Aid Given or Received**
1  Mutual aid received

Last Cleared:

**Primary Action Taken(1)**
22  Rescue, remove from harm

Additional Action Taken(2)

**Property Use**
937  Beach

**Sort Fld 1**
SOUTH HAVEN CITY

### Responding Personnel & Units        Total Personnel: 21        Total Units: 8

| Unit ID | Personnel ID | Name | Comment | Run Hrs:Min | Pav Hrs:Min |
|---|---|---|---|---|---|
| 2201 | 101 | Hinz, Brandon Charles | Command Off Duty | 3:14 | 3:14 |
| 2202 | 102 | Bierhalter, Keith Vincent | Command Off Duty | 3:14 | 4:00 |
| 2271 | 105 | Ridley, Ronald Scot | Fire on Duty | 3:14 | 3:14 |
| 2213 | 117 | Cavadas, Steven A | Off Duty | 3:14 | 4:00 |
| 2265 | 106 | Quinn, James D | Off Duty | 4:00 | 2:00 |
| 2265 | 104 | Quinn, Paul Tyson | Off Duty | 4:00 | 4:00 |
| 2281 | 10000 | No, Unit | | 3:14 | 3:14 |
| POV | 51 | Brennen, William T | POC General | 3:14 | 3:14 |
| POV | 38 | Dey, Matthew K | POC General | 3:14 | 3:14 |
| POV | 53 | Fox, Roseanna R | POC General | 3:14 | 3:14 |
| POV | 121 | Guminski, Dustin Randy | POC General | 3:14 | 3:14 |
| POV | 122 | Horan, Brian J | POC General | 3:14 | 3:14 |
| POV | 123 | Kaput, Mark S | POC General | 3:14 | 3:14 |
| POV | 64 | Quinn, James Albert | POC General | 3:14 | 3:14 |
| POV | 31 | Quinn, Shawn J | POC General | 3:14 | 3:14 |
| POV | 124 | Quinn, Timothy M | POC General | 3:14 | 3:14 |
| POV | 140 | Renner, Thomas | POC General | 3:14 | 3:14 |
| POV | 60 | Schmid, Justin I | POC General | 3:14 | 3:14 |
| POV | 36 | VanHolt, Timothy L | POC General | 3:14 | 3:14 |
| POV | 2020INT-1 | Yarbrough, Stewart J | POC General | 3:14 | 3:14 |
| STA 3 | 109 | Montgomery, Brian K | General Response St3 | 3:14 | 3:14 |

| Unit ID | Dispatch | Arrival | Clear |
|---|---|---|---|
| 2201 | 09/06/2020 16:20 | 09/06/2020 16:39 | 09/06/2020 19:34 |
| 2202 | 09/06/2020 16:20 | 09/06/2020 16:27 | 09/06/2020 19:34 |
| 2271 | 09/06/2020 16:20 | 09/06/2020 16:25 | 09/06/2020 19:34 |
| 2213 | 09/06/2020 16:20 | 09/06/2020 16:35 | 09/06/2020 19:34 |
| 2265 | 09/06/2020 16:20 | 09/06/2020 16:30 | 09/06/2020 16:35 |
| 2281 | 09/06/2020 16:20 | 09/06/2020 16:30 | 09/06/2020 16:35 |
| POV | 09/06/2020 16:20 | 09/06/2020 16:25 | 09/06/2020 19:34 |

S HAVEN AREA EMERGNCY SERVICES, SOUTH HAVEN, MICHIGAN  49090
Basic Incident Information Report

Printed: 09/11/2020

Incident No.: 0001547, Exp. No.: 000, 09/06/2020

## Basic Information

| | | | | |
|---|---|---|---|---|
| **Location** | | **Date** | **Time** | **Shft/Pltoon Alarms District** |
| 60 Water ST | Alarm: | 09/06/2020 | 16:20 | B        1 |
| South Haven, MI 49090 | Dispatch: | 09/06/2020 | 16:20 | **Census Tract:** 11 - |
| | En Route: | 09/06/2020 | 16:20 | |
| **Incident Type** | Arrival: | 09/06/2020 | 16:24 | |
| 361  Swimming/recreational water areas rescue | Controlled: | / / | : : | |
| **Aid Given or Received** | | 09/06/2020 | 19:34 | |
| N  None | **Last Cleared:** | | | |
| **Primary Action Taken(1)** | **Additional Action Taken(2)** | | | |
| 31  Provide first aid & check for injuries | | | | |
| **Property Use** | **Sort Fld 1** | | | |
| 937  Beach | SOUTH HAVEN CITY | | | |

## Responding Personnel & Units      Total Personnel: 3      Total Units: 2

| Unit ID | Personnel ID | Name | Comment | Run Hrs:Min | Pay Hrs:Min |
|---|---|---|---|---|---|
| 2214 | 113 | Sedlak, Cody James | Med on Duty | 3:14 | 3:14 |
| 2211 | 108 | Hinz, Dawn T | Med on Duty | 3:14 | 3:14 |
| 2211 | 116 | Kenreich, Zachary W | Med on Duty | 3:14 | 3:14 |

| Unit ID | Dispatch | Arrival | Clear |
|---|---|---|---|
| 2214 | 09/06/2020 16:20 | 09/06/2020 16:24 | 09/06/2020 18:45 |
| 2211 | 09/06/2020 16:20 | 09/06/2020 16:24 | 09/06/2020 19:34 |

## Narrative

Called for 2 subjects struggling in the water. Patient pulled from Water signed refusal.

2214:1620*1620*1624*1845
2211:1620*1620*1628*1934

## Authorizations

Officer in Charge:  Hinz, 101 Brandon C _____ Rank: Chief

Member Making Report:  Sedlak, 113 Cody J _____ Rank: FT/FF/EMTP

Basic Incident Report, Printed 09/11/2020                                                    Page: 2
Incident No.: 0001548, Exp. No.: 000, 09/06/2020

| Responding Personnel & Units | | Total Personnel: 21 | Total Units: 8 | |
|---|---|---|---|---|
| STA 3 | 09/06/2020 16:20 | 09/06/2020 16:25 | 09/06/2020 19:34 | |
| Narrative | | | | |

Called for 2 subjects struggling in the water. One Subject rescued from water and signed refusal. Second subject unable to be recovered at this time.

113: Arrival on scene found PD at shore and one Officer in the water at the one victim holding onto swimming bouy directly west of flag 11. Current swim conditions at flag 11 and 10 was red flag and flag 12 was yellow. 113 Entered the water with PD as shore support and line tender. Swiming out to victim PD officer had to release victim due to wave condition and unable to support him in wave conditions. Victim was still holding onto Bouy upon 113 reaching him. Rope was maxed at 300 FT. Per shore support after returning to shore they stated they had added line and used about 100 feet more. Victim was holding on to Fire personnel and was pulled into shore via line tenders. Patient signed refusal and search was continued for other subject missing in the water. Coast guard and VBCSD boats assisted in search. VBC Dive team and coast guard helicopter also called to assist.

105: Search for the second victim consisted of: walking on line search with 10 personnel tethered to one rescue line. The last reported location of the second victim was due west of flag 11 with wave and current action pushing him to the north. Search started south of that location about half way between flags 11 and 12. Search line moved north to the pier and returned to the starting point after moving out the width of the rescuer line. At this point all rescuers removed from the water due to exhaustion. Waves running 4 foot breakers at the farthest point searched.
  Another surface walking search done with SHAES and Van Buren Dive Team Personnel that covered the same area, plus a third past out further than the first with the team covering the intire swim area from the flag 12 to the South Pier with nothing found.
  Ganges Fire Department moved up an engine company to SHAES station 3 for fire coverage during this event.

101: At 16:20 hrs, 9/6/2020 SHAES was dispatched to the South Beach, near flag pole 11 for a report of 2 subjects in the water.  3 subjects had entered the water, 1 had made it to shore, 1, Joe, was at the time of arrival grasping a swim area buoy, 1, Brandon, had let go of the buoy in an attempt to swim to shore.  It was at this time Joe lost track of Brandon and believed he went under.  Last seen moving NW towards the South pier.

Upon arrival SHAES was advised that Sgt. Carlotto, SHPD, had entered the water in an attempt to rescue the young male, Joe, still holding on to the swim buoy.  Joe was panicked, advised his friend have the hazards of the piers and currents, Sgt Carlotto advised Joe to hold onto the buoy and await rescue by SHAES units close by.  Sgt. Carlotto attempted to locate Brandon before becoming exhausted and needed rescue by VBC Marine Patrol.  SHAES responders Sedlak, Horan Sr., and Shawn Quinn rescued Joe from the buoy he was clinging to bringing him to shore.

SHAES, SHPD, VBC dive team performed multiple searches along the shoreline and near the pier until conditions worsened enough to call off the search. U.S. Coast Guard responded with a vessel from the St. Joseph area and a helicopter from the Milwaukee area.
Media had misrepresented the flag status at the time of the reports.  Van Buren county was a "yellow flag" caution warning, according to NOAA, at the time of the incident.  SHAES beach interns, knowing the hazards of the piers and currents, presented red flags at poles 10 and 11 that morning.  After the rescues, approx. 1700 hrs, SHAES beach intern was advised to change all flags to red due to the rapid change in conditions since the time rescue units had arrived on scene.

Multiple reports given by first responders, other witnesses and other swimmers on scene there was an apparent rip current between/near flag poles 11 and 12. All reported that a strong current was moving Westerly from that area

Basic Incident Report, Printed 09/11/2020                                                    Page: 3
**Incident No.: 0001548, Exp. No.: 000, 09/06/2020**

---

### Narrative

Witnesses/swimmers also stated the conditions started to worsen rapidly just prior to the incident.


2271:1620*1620*1625*1934
2201:1620*1623*1639*1934
2202:1620*1624*1630*1934
2265/2281:1620*1626*1630*1645
2213:1620*1630*1635*1934

### Authorizations

Officer in Charge:  Hinz, 101 Brandon C                          _____   Rank: Chief

Member Making Report:   Sedlak, 113 Cody J                       _____   Rank: FT/FF/EMTP



**South Haven Area Emergency Services**

90 Blue Star Highway • South Haven, Michigan 49090
Phone (269) 637-1813 • Fax (269) 637-0998
www.shaes.org

PRESS STATEMENT
September 10, 2020

Searching resumed today (Thursday, Sept. 10) for the swimmer lost off the South Beach in South Haven on Sunday, Sept. 6.

SHAES, SHPD, Van Buren County Sheriff Dive Team, Allegan County Sheriff Dive Team have all put forth great efforts to recover the missing swimmer.  We regret he has not been located.

After more investigation into this incident, the rescued and missing swimmers in the Sept. 6 incident entered the water under a yellow flag warning. Conditions deteriorated rapidly and a strong rip current carried the swimmers, first responders as well, to an area marked by red flags nullifying initial reports that the entire beach was under a red flag warning.

As a reminder, please use extreme caution upon entering any of our Great Lakes.  Conditions can worsen in an instant, putting swimmers in danger. We will continue to educate ourselves to prevent incidents such as this in the future.

Brandon Hinz
Executive Director
South Haven Area Emergency Services

**9-6-2020**

**Incident # 1548**

At 16:20 hrs, 9/6/2020 SHAES was dispatched to the South Beach, near flag pole 11 for a report of 2 subjects in the water.  3 subjects had entered the water, 1 had made it to shore, 1, Joe, was at the time of arrival grasping a swim area buoy, 1, Brandon, had let go of the buoy in an attempt to swim to shore.  It was at this time Joe lost track of Brandon and believed he went under.  Last seen moving NW towards the South pier.

Upon arrival SHAES was advised that Sgt. Carlotto, SHPD, had entered the water in an attempt to rescue the young male, Joe, still holding on to the swim buoy. Joe was panicked, advised his friend had went under, Sgt Carlotto advised Joe to hold onto the buoy and await rescue by SHAES units close by.  Sgt. Carlotto attempted to locate Brandon before becoming exhausted and needed rescue by VBC Marine Patrol.  SHAES responders Sedlak, Horan Sr., and Shawn Quinn rescued Joe from the buoy he was clinging to bringing him to shore.

SHAES, SHPD, VBC dive team performed multiple searches along the shoreline and near the pier until conditions worsened enough to call off the search.  U.S. Coast Guard responded with a vessel from the St. Joseph area and a helicopter from the Milwaukee area.

Media had misrepresented the flag status at the time of the reports.  Van Buren county was a "yellow flag" caution warning, according to NOAA, at the time of the incident.  SHAES beach interns, knowing the hazards of the piers and currents, presented red flags at poles 10 and 11 that morning.  After the rescues, approx. 1700 hrs, SHAES beach intern was advised to change all flags to red due to the rapid change in conditions since the time rescue units had arrived on scene.

After multiple reports given by first responders, other witnesses and other swimmers on scene there was an apparent rip current between/near flag poles 11 and 12.  All reported that a strong current was moving Westerly from that area.

Reports from witnesses and swimmers stated the conditions started to worsen rapidly just prior to the incident.

# EXHIBIT E

# Victims identified after drowning at South Haven beach Monday

by Gabrielle Dawson | News Channel 3 Wed, August 10th 2022

*Pictured is the scene at South Haven beach after two drowned, the victims were identified, Aug. 10, 2022. (Horizon Broadband/WWMT)*

SOUTH HAVEN, Mich. — The victims who were pulled from Lake Michigan in South Haven Monday have been identified by the South Haven Police Department.

Wednesday the names of the victims were identified as Kory Ernster, 22, of Novi and Emily MacDonald, 19, of Columbus.

Ernster and MacDonald were pulled from the choppy waters on South Beach under yellow flag conditions, officials said yellow flags mean swim at your own risk.

Police said both were unresponsive when they were pulled from the waters.

Promoted Links

**Target Shoppers Say This Drugstore Wrinkle Cream Is Actually Worth It**
Super C Serum

Learn More

A beachgoer pulled the first victim out of the water before a group of bystanders pulled a woman out of the water around seven minutes later.

- **Previous coverage:** 2 confirmed drowned off South Haven beach

Witnesses Pat and Erin O'Hearn said first responders arrived quickly to the scene and began performing CPR, officials later confirmed both died.

"It was rough water out there and we said several times 'I think a red flag should be up.' It was very rough and there were a lot of little ones even out there swimming down the beach even with this going on down here," Erin O'Hearn said.

- **Community:** South Haven community spreads beach safety awareness after more drownings

All four drownings this month happened under yellow flag conditions. It's part of the flag system in place in South Haven, warning people of water conditions.

Despite the recent tragedies, South Haven City Manager Kate Hosier said she doesn't think lifeguards will be implemented any time soon.

After the drownings, community member Amanda Soukup put up signs and handed out stickers saying, "Big waves? STAY SAFE in the SAND."

- **Drownings:**Lifeguards not being considered in South Haven despite four drownings in less than a month

When asked if the city or South Haven Area Emergency Services should be quicker to throw up a red flag, Hosier said no.

"We want to make sure that people actually follow the red flags, so you want to make sure that they are adhering to the conditions. If you put a red flag out there always, people will never follow a red flag. So you want to make sure that the conditions follow the flag notifications," she said.

Red flags did go up after Monday's drownings.

Hosier expressed condolences to the victim's and their families.

# Teenage boy drowns at Lake Michigan beach

undefined

undefined

By: Kyle Simon
*Posted at 12:13 PM, Jul 15, 2019*
*and last updated 12:13 PM, Jul 15, 2019*

A family trip turned to tragedy when a 13-year-old boy drowned on Saturday, July 13 in Lake Michigan while he and his family were visiting South Haven.

Witnesses called 911 when the boy and an accompanying adult drifted away from shore while swimming and became too tired to swim back.

A paddleboarder rescued the adult.

Rescuers found the boy about 100 yards away from shore more than 20 minutes after first responders arrived.

Recent Stories from fox47news.com

**Top Stor...**

READ MORE

Lansing Community College
- 01/26/24

South Haven Area Emergency Services announced Saturday that the Ann Arbor boy, died despite emergency responders' CPR and rescue attempts.

Swimming conditions for swimming began on Saturday with a green flag for all South Haven beaches, but officials upgraded to a yellow flag around 11 a.m. as wind and wave conditions changed.

The U.S. Coast Guard and the Van Buren
County Sheriff's Office also assisted the South
Haven Area Emergency Services.

# Green, Yellow and Red Flags: Who puts up the flag warning system in South Haven?

by Maria Serrano | News Channel 3 Wed, August 3rd 2022



0%

**Video from our partners**
Brought to you by Taboola

- **Fines in South Haven:** Red flag swimmers fined more than $25,000 one week after drownings in South Haven

Whether it's a green, yellow or red flag, Dawn Hinz who manages the flag warning system in South Haven said no water is guaranteed to be safe.

"There are drownings in Lake Michigan on flat green days," said Dawn Hinz, firefighter and paramedic at South Haven Area Emergency Services who also manages the city's flag program. "Water has to be

respected."

A yellow flag means you can swim with caution, but the water can still be treacherous.

"It's just it is so risky, but not as risky as the red flag," said Hinz.

A red flag means there are 4-foot plus waves, so the currents could be enough to drown even experienced swimmers.

- **Also, in South Haven:** beachgoers may get fined during red flag conditions

A green flag means you can swim, but be aware of potentially changing conditions.

Hinz said arming staff with forecast information is critical.

"We start by looking at the great lakes beach forecast," said Hinz.

Hinz says beach staff then scroll through near shore forecasts and wave height predictions before making a decision.

"One we check out is Wind Finder, and this one gives very nice predictions," said Hinz. She said the final step is scanning the beach.

- **Different flag systems:** at state and city shores causing confusion for some beachgoers

"We go there with eyes and look at it, what our actually conditions in real time in front of me," said Hinz.

The City of South Haven has a new ordinance that levies a one thousand dollar fine, if you do enter the water when swimming is prohibited.

# Four dead in separate drownings in West MI

by: Madalyn Buursma, Michael Oszust
Posted: Jul 13, 2022 / 08:58 PM EDT
Updated: Jul 14, 2022 / 01:46 PM EDT

**SHARE** 



FERRYSBURG, Mich. (WOOD) — Emergency crews responded to a number of drownings in Lake Michigan and nearby channels on Wednesday, with four bodies recovered.

The first drowning happened around 7:30 p.m. at North Beach in South Haven. Five people, two adults and three kids, were struggling in the water, the Van Buren County sheriff told News 8. They were able to get two adults and one kid out of the water.

The young boy, who is around 7 or 8 years old, washed up on shore, the sheriff said. The sheriff says CPR was administered and he was brought to the hospital, but he died.

### Ask Ellen: What caused such dangerous beach conditions Wednesday?

The sheriff said the adult, a 33-year-old man, had tried saving him. He is presumed to have drowned, the South Haven Police Department said in a release.

After hours of searching, dive teams found a body in the lake just off the North Beach piers, according to South Haven fire chief Brandon Hines.

Police say the 33-year-old man was from Ohio and the 7-year-old was from Texas. Officials have not yet said whether the man and boy were related.

South Haven police say a red flag was flying by the pier and a yellow flag was flying to the north. Witnesses told police that the conditions at the lake had "deteriorated rapidly before the incident."

*First responders conducting a water search in North Beach in South Haven on July 13, 2022. (Courtesy South Haven Area*

1 / 6

At North Beach Park in Ferrysburg, a teenager started struggling in the water around 7:50 p.m., the Ottawa County Sheriff's Office said in a release. It said the 16-year-old from Norton Shores was at the beach with a church group. Deputies say while swimming, water conditions pushed him out of the designated swimming area.

Beachgoers tried to save him but were not able to reach him before he went under. Multiple agencies, including the Ottawa County Sheriff's Office dive team and the Coast Guard, were on scene looking for him, dispatch told News 8. First responders recovered his body.

Deputies say life-saving efforts were unsuccessful and the teenager died.



First responders conducting a water search in North Shore Beach in Ferrysburg on July 13, 2022. (Courtesy Grand Haven Tribune)

A 74-year-old Coopersville man also drowned Wednesday, according to the Grand Haven Department of Public Safety. It reports he drowned in the Grand River near Grand Isle Marina and deputies have recovered his body at 5:45 p.m. There is no evidence of foul play, officers said.

"The victim is presumed to have drowned, but we don't draw final conclusions until we have

all the information and complete an investigation," said Jeff Hawke, director of public safety

in a **Facebook post**.

**The Ottawa County Sheriff's Office told the Tribune** that investigators believe he fell off

his boat at Grand Isle Marina and it was believed to be an accidental drowning.

# EXHIBIT F

03/03/2023 11:13 AM
User: MARGUE
DB: South Haven

**REVENUE AND EXPENDITURE REPORT FOR CITY OF SOUTH HAVEN**

Month Ended: June

Page: 1/2

| GL NUMBER | DESCRIPTION | BALANCE AS OF 06/30/2017 | BALANCE AS OF 06/30/2018 | BALANCE AS OF 06/30/2019 | BALANCE AS OF 06/30/2020 | BALANCE AS OF 06/30/2021 |
|---|---|---|---|---|---|---|
| **Fund 577 - BEACH FUND** | | | | | | |
| **Dept 000 - REVENUES** | | | | | | |
| 577-000-652-001 | PARKING FEES - SEASONAL | 7,100.00 | 39,860.00 | 18,550.00 | 7,845.00 | 54,060.00 |
| 577-000-652-002 | PARKING FEES - WEEKLY | 7,455.00 | 6,630.00 | 15,550.00 | 11,220.00 | 11,020.00 |
| 577-000-652-003 | PARKING FEES - DAILY | 313,033.72 | 351,829.34 | 344,841.93 | 391,885.04 | 447,452.86 |
| 577-000-658-000 | PARKING PENALTIES | 15,746.05 | 33,164.00 | 25,681.00 | 20,057.00 | 19,289.08 |
| 577-000-665-000 | INTEREST INCOME | 312.54 | 156.05 | 4,909.03 | 6,274.79 | 19,426.80 |
| 577-000-667-012 | LEASE REV - CONCESSION STANDS | 17,000.00 | 17,100.00 | 29,786.90 | 28,148.72 | 30,522.59 |
| 577-000-690-000 | SUNDRY-MISC OPERATING REVENUE | 9,676.50 | 12,339.80 | 25.00 | 0.00 | 0.00 |
| | **Net - Dept 000 - REVENUES** | 370,323.81 | 461,079.19 | 439,163.86 | 474,430.65 | 563,209.40 |
| **Dept 751 - PARK DEPARTMENT** | | | | | | |
| 577-751-703-000 | SALARIES & WAGES - FULL-TIME | 30,066.61 | 28,572.40 | 34,404.37 | 43,056.59 | 40,625.34 |
| 577-751-704-000 | SALARIES & WAGES - PART-TIME | 25,295.62 | 24,285.11 | 21,644.86 | 14,695.19 | 12,667.25 |
| 577-751-707-000 | HOLIDAY PAY | 0.00 | 0.00 | 0.00 | 0.00 | 271.72 |
| 577-751-708-000 | OVERTIME - FULL-TIME | 10,081.55 | 12,465.86 | 10,233.09 | 11,910.94 | 9,536.30 |
| 577-751-709-000 | OVERTIME - PART-TIME | 1,837.61 | 1,931.93 | 1,776.36 | 1,499.32 | 2,309.62 |
| 577-751-710-000 | PAYMENT IN LIEU OF INSURANCE | 9,042.97 | 9,175.27 | 8,704.88 | 10,499.30 | 9,196.92 |
| 577-751-710-001 | HEALTH/DENTAL INSURANCE | 408.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 577-751-712-000 | PAYMENT IN LIEU OF INSURANCE | 1,833.17 | 636.51 | 422.28 | 400.03 | 168.68 |
| 577-751-713-000 | WORKERS COMPENSATION | 5,016.87 | 4,989.85 | 5,054.93 | 5,300.43 | 4,848.15 |
| 577-751-715-000 | PAYROLL TAXES | 548.17 | 117.55 | 94.04 | 232.53 | 280.81 |
| 577-751-716-000 | LIFE & DISABILITY INSURANCE | 347.63 | 327.76 | 334.98 | 405.11 | 395.93 |
| 577-751-727-000 | EMPLOYER MERS CONTRIBUTIONS | 4,059.35 | 4,334.29 | 5,233.75 | 6,709.72 | 6,404.38 |
| 577-751-741-000 | OFFICE SUPPLIES | 25.29 | 451.00 | 184.60 | 110.66 | 597.05 |
| 577-751-751-000 | OPERATING SUPPLIES | 7,143.04 | 14,243.62 | 13,222.90 | 7,220.51 | 6,195.45 |
| 577-751-801-000 | MOTOR FUEL | | | 102.33 | 356.77 | 373.75 |
| 577-751-802-000 | PROFESSIONAL/CONSULTING FEES | 360.00 | 10,969.00 | 550.00 | 10,660.64 | 7,211.63 |
| 577-751-803-000 | OTHER CONTRACTUAL SERVICES | 130,684.01 | 106,489.78 | 148,999.21 | 56,736.74 | 74,042.06 |
| 577-751-850-000 | CREDIT CARD FEES | 10,165.49 | 10,396.06 | 11,997.21 | 13,490.00 | 13,088.22 |
| 577-751-870-000 | TELEPHONE | 4,738.84 | 5,366.12 | 5,347.57 | 5,367.16 | 3,655.83 |
| 577-751-900-000 | PAYMENT IN LIEU OF TAXES | 13,650.00 | 19,208.00 | 21,565.00 | 21,503.04 | 21,093.10 |
| 577-751-921-000 | PRINTING/PUBLISHING | 279.50 | 203.46 | 636.00 | 203.12 | 203.12 |
| 577-751-921-001 | UTILITIES - ELECTRIC | 6,878.89 | 6,488.31 | 5,859.32 | 4,319.88 | 3,347.92 |
| 577-751-932-000 | UTILITIES - WATER & SEWER | 7,428.97 | 16,620.14 | 21,424.01 | 23,124.18 | 31,616.66 |
| 577-751-942-000 | REPAIRS/MAINT-BUILDS & STRCTRE | 0.00 | 0.00 | 1,202.63 | 0.00 | 0.00 |
| 577-751-956-000 | REPAIRS/MAINTENANCE - OTHER | 15,906.00 | 42,755.09 | 793.80 | 0.00 | 18,478.00 |
| 577-751-965-101 | MOTOR POOL FEES | | 2,240.00 | 1,689.00 | 2,565.00 | 3,906.00 |
| 577-751-969-101 | ADMIN FEES - GENERAL FUND | 20,060.00 | 22,669.00 | 23,000.00 | 23,579.04 | 24,169.00 |
| 577-751-969-111 | POLICE DEPART FEES-GEN FUND | 30,344.00 | 30,346.00 | 31,768.00 | 32,562.00 | 33,376.00 |
| | **Net - Dept 751 - PARK DEPARTMENT:** | (340,601.88) | (376,022.93) | (395,657.54) | (345,575.62) | (339,015.77) |
| **Dept 965 - OPERATING TRANSFERS OUT** | | | | | | |
| 577-965-999-101 | OPERATING TRANS OUT-GEN FUND | 0.00 | 0.00 | 64,000.00 | 43,506.00 | 0.00 |
| 577-965-999-401 | OPER TRANS OUT - CAP PROJ FUND | 0.00 | 0.00 | 0.00 | 0.00 | 64,000.00 |
| | **Net - Dept 965 - OPERATING TRANSFERS OUT:** | 0.00 | 0.00 | (64,000.00) | (43,506.00) | (64,000.00) |

03/03/2023 11:13 AM
User: MARGUE
DB: South Haven

REVENUE AND EXPENDITURE REPORT FOR CITY OF SOUTH HAVEN

Month Ended: June

Page: 2/2

Fund 577 - BEACH FUND

| GL NUMBER | DESCRIPTION | BALANCE AS OF 06/30/2017 | BALANCE AS OF 06/30/2018 | BALANCE AS OF 06/30/2019 | BALANCE AS OF 06/30/2020 | BALANCE AS OF 06/30/2021 |
|---|---|---|---|---|---|---|
| | TOTAL REVENUES | 370,323.81 | 461,079.19 | 439,163.86 | 474,430.65 | 563,209.40 |
| | TOTAL EXPENDITURES | 340,401.88 | 376,022.93 | 459,657.54 | 389,081.62 | 403,015.77 |
| | NET OF REVENUES & EXPENDITURES | 29,921.93 | 85,056.26 | (20,493.68) | 85,349.03 | 160,193.63 |
| | BEG. FUND BALANCE | 252,236.84 | 282,158.77 | 367,215.03 | 346,721.35 | 432,070.38 |
| | END FUND BALANCE | 282,158.77 | 367,215.03 | 346,721.35 | 432,070.38 | 592,264.01 |

## Overview of the Financial Statements

This discussion and analysis is intended to serve as an introduction to the City of South Haven financial statements. The City of South Haven basic financial statements comprise three components: 1) government-wide financial statements, 2) fund financial statements, and 3) notes to the financial statements. This report also contains other supplementary information in addition to the basic financial statements themselves.

**Government-wide financial statements.** The *government-wide financial statements* are designed to provide readers with a broad overview of the City of South Haven finances, in a manner similar to a private-sector business.

The *statement of net position* presents information on all of the City of South Haven assets and liabilities, with the difference between the two reported as *net position*. Over time, increases or decreases in net position may serve as a useful indicator of whether the financial position of the City of South Haven is improving or deteriorating.

The *statement of activities* presents information showing how the government's net position changed during the most recent fiscal year. All changes in net position are reported as soon as the underlying event giving rise to the change occurs, *regardless of the timing of related cash* flows. Thus, revenues and expenses are reported in this statement for some items that will only result in cash flows in future fiscal periods (e.g., earned but unused vacation leave).

Both of the government-wide financial statements distinguish functions of the City of South Haven that are principally supported by taxes and intergovernmental revenues *(governmental activities)* from other functions that are intended to recover all or a significant portion of their costs through user fees and charges *(business-type activities)*. The governmental activities of the City of South Haven include general government, public safety, public works, health and welfare, and culture and recreation. The business-type activities of the City of South Haven include electric, water, and sewer utilities as well as marina, parks and beach activities.

The government-wide financial statements include not only the City of South Haven itself (known as the *primary government)*, but also legally separate component units for which the City of South Haven is financially accountable. Component units include the Downtown Development Authority, three Local Development Finance Authorities, and the Brownfield Redevelopment Authority. Financial information for these *component units* are reported separately from the financial information presented for the primary government itself.

**Fund financial statements.** A *fund* is a grouping of related accounts that is used to maintain control over resources that have been segregated for specific activities or objectives. The City of South Haven, like other state and local governments, uses fund accounting to ensure and demonstrate compliance with finance-related legal requirements. All of the funds of the City of South Haven can be divided into three categories: governmental funds, proprietary funds, and fiduciary funds.

**Governmental funds.** *Governmental funds* are used to account for essentially the same functions reported as *governmental activities* in the government-wide financial statements. However, unlike the government-wide financial statements, governmental fund financial statements focus on *near-term inflows and outflows of spendable resources,* as well as on *balances of spendable resources* available at the end of the fiscal year. Such information may be useful in evaluating a government's near-term financing requirements.

# EXHIBIT G



FOX 17
WEST MICHIGAN

⚡ 14 weather alerts    🏠 43 closings/delays    Watch Now

Menu    🎧 ᴬᴰⱽᴱᴿᵀᴵˢᴱᴹᴱᴺᵀ



Watch Now

Quic

ADVERTISEMENT





▷ ×

BOOK NOW



ASE

🅕 𝕏 ✉

# SHAES implores beachgoers to ᵉ Michigan during dangerous

South Haven Area Emergency Services says bystanders rescued two people from Lake Michigan at South Beach.



FOX 17 | NEWS

LAKE MICHIGAN WATER INCIDENTS UNDER INVESTIGATION

CLOSE

ADVERTISEMENT

FOX 17 WEST MICHIGAN

⚡ 14 weather alerts    🏠 43 closings/delays

Watch Now

ADVERTISEMENT

SOUTH HAVEN, Mich. — Last summer, South Haven Area Emergency Services responded to a total of three water emergencies, which all turned out to be false alarms, said executive director Brandon Hinz.

This summer has been a different story.

"We've been dispatched probably four to fives times," Hinz said. "We had two drownings here probably about three weeks ago. And then today we were dispatched as well."

Recent Stories from fox17online.com



Monday afternoon, around 1 o'clock, SHAES was dispatched to South Beach due to reports of two people in the water. Bystanders rescued them. First responders administered CPR and then transported them to Bronson South Haven.

Hinz said he doesn't know their conditions yet. However, the incident is under investigation.

CLOSE

ADVERTISEMENT



**FOX 17** WEST MICHIGAN

⚡ 14 weather alerts   🏢 43 closings/delays   | Watch Now |

※ **DO NOT GO INTO LAKE MICHIGAN TODAY** ※

@NWS says:

🌊 are high, strong currents
🌊 conditions are dangerous
〰️ 15-25 mph
⚫ Flags are red
🚩 is for beaches in Mason, Oceana, Allegan, Van Buren, Muskegon counties.
🚩 in effect til Tuesday morning // @FOX17

Watch on X

4:44 PM · Aug 8, 2022                                      ⓘ

❤️ 1     💬 Reply     ⬆️ Share

Read more on X

"Lake Michigan, I know it's a different body of water. There's undertows. There's rip currents and conditions can change in an instant. That's something that's been ingrained in me since I was a kid," said Hinz, who grew up in the area. "So, I guess I'm always a little on the safe side as far as the lake goes. But, I don't know if it's folks from out of town that visit our area that might not know that."

The National Weather Service said that Monday's conditions were hazardous and that waves could reach up to and over four feet, along with wind gusts up to 25 mph.

ADVERTISEMENT



next      tv

THE FUTURE
OF TELEVISION
HAS ARRIVED

LEARN MORE

| CLOSE |

ADVERTISEMENT

FOX17 WEST MICHIGAN    ⚡ 14 weather alerts    🏫 43 closings/delays    Watch Now

ADVERTISEMENT

"Flip, float, and follow: flip on your back, let it take you out to where it's going to take you and just let it take you out. Follow it and then swim along the shore until you're out of the rip current," Hinz said. "Then try to swim back to shore. Obviously know your limits. If you're not a great swimmer, you shouldn't be out on a yellow-flag day. Even a good swimmer can get taken out on a yellow flag day."

Both north and south beaches were dotted with red flags on Monday, which means do not go in the water. When they're yellow it means people should use caution. And, when they're green it means conditions are safe to enjoy the water.

But, Hinz warned to always be cautious.

"Even with the flag colors as they are, there's just no guarantee," he said. "A rip current could be underneath and nobody could see it, even on a yellow-flag day. And, conditions can change. We've seen it change multiple times, just at the flick of a switch."

ADVERTISEMENT



**Grandma Attacke
Store In Jackson**

Spo

So, he stressed: know your limits. Also wear floaties or life jackets or use flotation devices, especially for small kids. And, keep them within arms reach.

Nevertheless, always abide by the flags.

"So many times this summer we've had red flags up and people are still getting into the water. It means stay out of the water," Hinz said. "Do not enter. Don't get up to your ankles or your knees. You just keep pushing it further and further and further. Just stay out."

Copyright 2022 Scripps Media, Inc. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

Sign up for the **Breaking News Newsletter** and receive up to date information.

| E-mail | Submit |

CURATION BY                                                                 Recommended by Outbrain

CLOSE

ADVERTISEMENT

# EXHIBIT H

SOUTH HAVEN, Mich. — The city of South Haven has seen four drownings in less than one month.

On Monday, a 22-year-old man from Novi and 21-year-old woman from Columbus, Michigan, were pulled from choppy waters on South Beach under yellow flag conditions. Officials said yellow means to swim at your own risk.

- **Previous reporting:**South Haven community spreads beach safety awareness after more drownings

Witnesses Pat and Erin O'Hearn said first responders arrived quickly to the scene and began performing CPR. Officials later confirmed both died.

"It was rough water out there and we said several times 'I think a red flag should be up.' It was very rough and there were a lot of little ones even out there swimming down the beach even with this going on down here," Erin O'Hearn said.

Promoted Links

**Cardiologist Share Morning Tip for Quick Weight Loss**

Healthy-Guru.

Watch N◁

▷

All four drownings this month happened under yellow flag conditions. It's part of the flag system in place in South Haven, warning people of water conditions.

Despite the recent tragedies, South Haven City Manager Kate Hosier said she doesn't think lifeguards will be implemented any time soon.

- **Related:** Green, Yellow and Red Flags: Who puts up the flag warning system in South Haven?

"We have multiple SHAES (South Haven Area Emergency Services) volunteers on any one day out there. We have code enforcement out there. We've really stepped up a lot of enforcement out there to make sure people understand what the conditions mean," said Hosier.

The city has other enforcements on the beach also, like signage and loaner life jackets that were implemented last week.

"When we went through our 2021 best practices and looking at water and beach safety, the community really wanted to see some more action from us," Hosier said. "We did implement that ordinance with a very stiff thousand dollar fine for entering the water during red flag conditions and it's been very well received by the community."

In July, South Haven Police issued 25 fines in one day for people caught swimming under red flag conditions. That totaled $25,000 that police said went to the city's general fund.

- **Previous reporting:** Red flag swimmers fined more than $25,000 one week after drownings in South Haven

When asked if the city or SHAES should be quicker to throw up a red flag, Hosier said no.

"We want to make sure that people actually follow the red flags, so you want to make sure that they are adhering to the conditions. If you put a red flag out there always, people will never follow a red flag. So you want to make sure that the conditions follow the flag notifications," she said.

Red flags did go up after Monday's drownings.

Hosier expressed condolences to the victim's and their families.

# South Haven beach may switch to double red flags when closed to swimming

Published: Dec. 03, 2022, 7:40 a.m.



A red flag flies in the wind at South Beach in South
Haven, Michigan on Tuesday, Sept. 7, 2021. (Joel
Bissell | MLive.com) Joel Bissell | MLive.com

By Brad Devereaux | bdeverea@mlive.com

SOUTH HAVEN, MI – When the Lake Michigan conditions became
dangerous in South Haven, a single red flag with a white "no
swimming" illustration has warned people to stay out of the water.

A new warning could be in place this summer.

If approved by city leaders, officials would fly two red flags to
signal when the swimming area is closed in adverse Lake Michigan
conditions usually featuring large waves.

South Haven officials are considering the switch to its beach safety
flag system to better align with the new warning rules that began
rolling out at state park beaches in 2022.

At beaches across the state controlled by the Michigan Department of Natural Resources (DNR), a single red flag means there is a "high hazard" due to water conditions.

In 2022, the DNR began adding a new flag designation -- flying two red flags to signal when the swimming area is closed, Chief of Parks and Recreation for the Michigan Department of Natural Resources Ron Olson told MLive/Kalamazoo Gazette.

**Related:** New double red flags mean no swimming at Grand Haven State Park and, soon, other beaches

The Michigan DNR introduced double red flags to some beaches in the spring of 2022, and the agency rolled the new flag system out to other locations through the year, Olson said. He anticipates all DNR beaches with flags will be set up to use the double red flag system in 2023, he said.

The city of South Haven is in charge of the rules at its two municipal beaches on Lake Michigan: North Beach and South Beach. The city monitors conditions at the beaches and uses a system of green, yellow, red and grey flags to communicate

warnings to beachgoers, which is similar to the flag system used by the DNR before the double red flags began appearing as a new addition.

City staff plans to recommend the South Haven City Council discuss implementing the flag system change in 2023 to be consistent with the State of Michigan, according to a Nov. 21 document about beach safety that City Manager Kate Hosier shared with MLive/Kalamazoo Gazette.

"As part of the ongoing, annual review of procedures, we have reached out to other lakeshore communities and the Michigan Department of Natural Resources for their best practices and summer experiences," Hosier told MLive/Kalamazoo Gazette.

"From my understanding, the DNR will be changing the flag system for all the state parks. Based on that information, and the fact that the State of Michigan has more beaches than any municipality in the State of Michigan, staff suggested that we follow the DNR's flag system change," Hosier said, with a recommendation that the city continue to be in control of when the flags should change based on conditions present.

"The rationale is that by having a cohesive flag color system, residents and visitors from in and out of the state will be understand the same flag system," Hosier said.

**Related:** Lake Michigan's deadly trend continues in 2022 despite increase in safety measures

The flag system is meant to inform people of the possible hazards of entering the water based on the conditions of the day. Officials use a variety of factors to track the conditions and update the flags accordingly, Olson said. It can also be used if there is debris or other harmful substances in the water, he said.

Olson said it is up to local communities with beaches under local control to come up with their own rules and regulations for beaches including the flag system.

Beach towns such as South Haven have been a part of ongoing discussions with the DNR and other stakeholders about the issue, including during a meeting in the city on Nov. 4, Olson said.

South Haven hosted the Beach Safety Summit in November, Hosier said, and representatives from local governments from up and down West Michigan attended as well as State of Michigan officials. The summit provided a time to learn and exchange ideas on safety protocols, new technology, and other tools being utilized, Hosier said.

The DNR does not have any control over what municipalities such as South Haven do, Olson said, though the different jurisdictions are aware of the DNR's updates.

Patrons sometimes don't pay attention to the jurisdiction operating the beach, he said.

"So we're appreciative of the collaboration discussed with local rescue units," Olson said. "What we want is to have public understanding at the greatest level possible."

The DNR is not trying to push its system on local municipalities, Olson said, but the more municipalities that adopt the same standard would be better for understanding, from a public perspective.

The change to add double red flags was made to help keep people safe, Olson said, adding, "We thought it was a better and more clear message for the public."

Ten people drowned off the Lake Michigan shoreline off Michigan beaches by the time the summer swimming season concluded on Labor Day weekend this year.

Beaches increased safety measures this year in an effort to reduce drownings. Rip current warning signs and a rescue ring were installed at Laketown Beach in Ottawa County, and life jacket stations were added to beaches in South Haven.

# Safety on the lakes: 2022 drownings ignite lifeguard debate



By Ahmad Bajjey, Jeffrey Popovich
Updated on: December 1, 2022 / 4:00 PM EST / CW50 Detroit

**(CBS DETROIT)** - Drownings in the Great Lakes for 2022 top the 100-victims mark. <u>In a previous story</u>, CBS Detroit talked about Kory Ernster and Emily MacDonald who both drowned in South Haven and heard their parents' grief and determination to stop drownings from happening again.

"I'm just heartbroken," said Stephen Ernster, father of Kory Ernster.



Kory Ernster and Emily MacDonald
LISA MACDONALD

"If your newscast saves one person. Not that it's going to make up for what we've lost, but people need to know" said Lisa MacDonald, mother of Emily MacDonald.

Both Ernster and Lisa MacDonald said lifeguards would have made the difference, and they hoped to see guards on South Haven beaches in the future.

South Haven City Manager Kate Hosier said colored flags on the beaches and signage were enough and something determined by the city council.

AD

"I would say that it's a little hard to do one size fits all, but there should be common messaging," said Hosier at the time.

But Dave Benjamin, director of the Great Lakes Surf Rescue Project, disagreed.

"The flag system is a tool for lifeguards to use and not a replacement for lifeguards," Benjamin said.

"But the state of Michigan and many city beaches got rid of their lifeguards quite some time ago, and they kept the flags. Assuming that the flags are going to be enough and the flags are not, the flags are inadequate."



Colored flags denote potential hazardous conditions

WATCH our first Safety on the Lakes story: Safety on the Lakes: Recent drownings in South Haven bring attention to lack of beach lifeguards

After that story aired, we went to South Haven to ask residents about the topic of lifeguards.

"I don't know if we're somehow not communicating the need for caution. We have a flag system, but that tends not to be across the beach" says resident Danielle Veenstra.

Veenstra lives near South Beach where Kory Ernster and Emily MacDonald drowned. She says the inconsistent messaging we found during our first story is a big worry.

"We can have one area with yellow flags, which is caution, one area with red flags which is do not go in or you're going to be fined," she said.

Veenstra says that hearing the city suggest more signage is the solution doesn't sit well with her.

"Many of our signs, there's too much information," she said.

Kameron Daugherty, another resident of South Haven, has been vocal in support of implementing lifeguards.

"Why are lifeguards not surviving the conversation, especially when we keep having the conversation over and over and over again," says Daugherty.

One argument against them is the cost of staffing and supporting lifeguards on South Haven public beaches like South Beach. It's something Daughetry says they proposed a solution for.

"My partner in Beach Safety Awareness Shawn, the former director of the Lifeguard Program in South Haven, and I put together a proposal right sized for South Haven's current tourist traffic, the amount of beaches that we have. That proposal that Shawn put together, we're talking about $200,000 a year," Daugherty said.

We did the math and found about 160 parking spaces at South Beach alone. Current parking is $10 per full day, half as much as parking in downtown Detroit.

If parking were increased by $5 per day, the additional revenue would be more than $98,000 from one beach lot if it were full each day. Doubling daily parking to $20 a day would add more than $196,000 from that lot alone remaining full. Even half full would leave an additional $98,000 in added revenue for one lot.

According to the South Haven Visitors Bureau, there are four paid lots.

"I've gotten lots of feedback from lots of visitors and locals alike that say that they would be fine with a further increase in beach parking fees if that's what it took in order to fund the lifeguards," Daugherty said.

"There's no lifeguards here. They can't change the flags fast enough to make a difference" says Sue Chambers.



SUE CHAMBERS

Chambers lost her grandson Brandon to the waves off South Haven beaches in 2020.

"They didn't know that flags were yellow down there," she says.

"The flags at the pier were red, but they were way down at Flag 12. They came to swim on Sunday before Labor Day, and there was a storm coming. And it didn't matter. I mean, they were five-foot waves, and they changed in an instant."

After clinging to a buoy with a friend, her grandson disappeared beneath the waves and didn't resurface. The video provided by Chambers shows a rescue boat returning to shore with Brandon's body after a week of searching.

Since that incident, there have been more than 185 drownings on all of the Great Lakes as a whole as of the summer vacation months. At the time of this story, that number has climbed to 206 drownings since Brandon drowned in 2020.

The recent drownings have brought lifeguards back to the conversation in South Haven. But it was discovered residents are concerned about those making decisions in the case of beaches and beach safety.



A now-deleted Facebook post in a public South Haven group expressing condolences showing Clark Gruber, member of the South Haven Planning Commission responding to the reported drownings of Kory Ernster and Emily MacDonald

After Kory Ernster and Emily MacDonald drowned, a Facebook group in South Haven posted condolences for their families.

The comment, sent to CBS Detroit by a resident of South Haven, shows planning commission board member Clark Gruber calling it "The Darwin family vacation."

Requests for comment about lifeguards and beach safety decisions to every city council member and the mayor were denied, directing us to Hosier.

Additionally, a request for comment from Gruber was directed to Hosier. In fact, all further requests for comment or clarification have been denied or redirected to Hosier.



Responses from South Haven elected officials to requests for comment on beach safety

We've reached out once more to the city of South Haven and Hosier for a response and have yet to hear back.

"We have decades of history showing that lifeguarding works in South Haven. So why would we not re-explore that?" Daugherty said.

"We have to take care of those people that we're inviting to our town because those are the ones that are drowning," Veenstra said.

"How do you value a life? We've lost four lives this summer. You can't place a value for the families there is no way they could value it. I can't place a value on that."